**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MICHELE KREMPASKY-PROCTOR

                                       Civil Action

       Plaintiff,

                                         No. GD

    v.

WILKINSBURG BOROUGH
and WILKINSBURG CHIEF OF
POLICE, OPHELIA COLEMAN

                                         <u>**Jury Trial Demanded**</u>

       Defendants.

## <u>CIVIL COMPLAINT</u>

Michele Krempasky-Proctor, by undersigned counsel files this Complaint and in support thereof alleges as follows:

### I. <u>Jurisdiction</u>

1.     The Jurisdiction of this Court is invoked pursuant to the Civil Rights Act of 1871, 42 U.S.C. ¶ 1983, 28 U.S.C. §§ 1343 (a)(3) and (a)(4); and 28 U.S.C. § 1331, and this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

### II. <u>Parties</u>

2.     Wilkinsburg Lieutenant, Michele Krempasky-Proctor (hereafter "Lieutenant Krempasky") is an adult individual who resides at 3289 North Hills Road, Murrysville,

PA 15668.

3.      Defendant, Wilkinsburg Borough, is a political subdivision, specifically a Borough of the Commonwealth of Pennsylvania, with a principle place of business at 605 Ross Avenue, Wilkinsburg, Pennsylvania 15221.  At all times relevant hereto, Wilkinsburg Borough acted by and through its Mayor, Police Chief, Council Members, Borough Managers, employees, officers, elected servants, agents and/or other Borough officials.

4.      Defendant, Chief Ophelia Coleman (hereafter "Chief Coleman"), is an adult individual who is employed as Chief of Police at Defendant Wilkinsburg Borough and therefore is a state actor.  Lieutenant Krempasky asserts that this action is against Wilkinsburg Borough Chief Coleman both individually and in her official capacity as Chief of Police of Wilkinsburg Borough.

### III.  Factual Background

5.      Lieutenant Krempasky has worked for Defendant Wilkinsburg Borough from July 1993 through the present day.  She is the most senior member of Defendants' Wilkinsburg Borough's Police Department.

6.      On April 8, 2010, Lieutenant Krempasky reported to Defendant Wilkinsburg Borough's Borough Manager's, Marla Marcinko (hereafter "Marcinko"), conference room to be interviewed/questioned by an investigator from Klink & Co., Inc. ("Klink") regarding Defendant Wilkinsburg Borough's Police Department's practices and Defendant Chief Coleman's practices.

7.      Prior to the interview with Klink, Lieutenant Krempasky, informed Defendant Wilkinsburg's Borough Manager, Marcinko, and the Klink

interviewer that she feared Defendants would retaliate against her for answering Klink's questions and/or participating in Klink's interview/investigation.

8.     Defendant Wilkinsburg's Borough Manager, Marcinko, and the Klink interviewer assured Lieutenant Krempasky she would suffer no retaliation from Defendants.  Based on these assurances, Lieutenant Krempasky participated in the Klink interview and complained about and/or reported certain practices of Defendants. Marcinko was present during the Klink interview.

9.     During the April 8, 2010 Klink interview, Lieutenant Krempasky was asked inter alia if she had any information regarding the members of Defendant Wilkinsburg Borough's Police Department's Special Operations Unit (hereafter "SOU") falsifying overtime.

10.     In response, Lieutenant Krempasky informed Klink she did have information regarding her good faith belief that members of Defendant Wilkinsburg Borough's Police Department's SOU were falsifying overtime, and Lieutenant Krempasky further provided payroll sheets to support her good faith belief that members of Defendant Wilkinsburg Borough's Police Department's SOU were falsifying overtime to Klink.

11.     During the April 8, 2010 Klink interview, Lieutenant Krempasky was asked inter alia about any Internal Investigations or disciplinary action that she had reported and/or brought to Defendant Chief Coleman's attention and/or of which Lieutenant Krempasky believed Defendant Chief Coleman had knowledge.

12.     In response, Lieutenant Krempasky provided Klink information regarding complaints made to Defendant Chief Coleman and/or complaints Lieutenant

Krempasky brought to Chief Coleman's attention regarding Wilkinsburg patrol officers/detectives allegedly engaging in conduct unbecoming an officer; theft; and excessive use of force to which, Lieutenant Krempasky complained, neither Defendant Wilkinsburg Borough nor Defendant Chief Coleman properly investigated and/or followed-up.

13.     Lieutenant Krempasky was subpoenaed to testify for a deposition, which was scheduled to take place on April 21, 2010, in the matter of <u>Brant Suley v. Wilkinsburg Borough and Wilkinsburg Chief of Police, Ophelia Coleman</u>, Case Number: 2:09-cv-00868 (hereafter "<u>Suley v. Wilkinsburg</u>").

14.     Prior to the scheduled April 21, 2010 deposition, when Lieutenant Krempasky was questioned by Defendants' Counsel for the <u>Suley v. Wilkinsburg</u> matter regarding her testimony, Lieutenant Krempasky informed Defendants' Counsel for the <u>Suley v. Wilkinsburg</u> matter that her testimony would support Suley's claims and would not be favorable to Defendant Wilkinsburg Borough or Defendant Chief Coleman.

15.     After Lieutenant Krempasky's interview with Klink on April 8 2010 and after Lieutenant Krempasky informed Defendants' Counsel that she would support Suley's claims against Defendant Wilkinsburg Borough and Defendant Chief Coleman in the <u>Suley v. Wilkinsburg</u> matter, Defendant Chief Coleman has retaliated against Lieutenant Krempasky in the following ways, including, but not limited to:

A.     On April 8, 2010, after the Klink interview, Defendant Chief Coleman spoke to Lieutenant Krempasky in an unprofessional and threatening manner at work.

B.     On or about April 22, 2010, Defendant Chief Coleman unilaterally changed Lieutenant Krempasky's work schedule/shift.

C.     Defendant Chief Coleman adversely impacted Lieutenant Krempasky's terms and conditions of employment by repeatedly attempting to prevent Lieutenant Krempasky from talking/interacting with Defendant Wilkinsburg Borough's Police Department's Administrative Assistant, Michelle Kenney (hereafter "Kenney"). Kenney also was subpoenaed to testify in the Suley v. Wilkinsburg manner and Kenney also was interviewed by Klink on April 8, 2010. As recently as December 15, 2010, Defendant Chief Coleman informed Lieutenant Krempasky that she was no longer permitted to "fraternize" with Kenney.

D.     Defendant Chief Coleman has made false accusations about Lieutenant Krempasky's employment, including but not limited to, accusing Lieutenant Krempasky of tampering with Defendant Wilkinsburg Borough's Police Department's camera system. Lieutenant Krempasky has not tampered with Defendant Wilkinsburg Borough's Police Department's camera system.

E.     Defendant Chief Coleman has repeatedly referred to Lieutenant Krempasky as "gangster."

F.     Defendant Chief Coleman has repeatedly referenced a "witness list" in a negative/threatening manner. Upon information and belief, this "witness list" is a list of individuals, including Lieutenant Krempasky, who were subpoenaed to testify in the Suley v. Wilkinsburg matter.

G.     On or about August 31, 2010, during a Safety Committee Tour, Defendant Chief Coleman berated and embarrassed Lieutenant Krempasky in the presence of Defendant Wilkinsburg Borough's officials.

H.     Defendant Chief Coleman has repeatedly belittled and embarrassed

Lieutenant Krempasky in the presence of her subordinates, attorneys, and Defendant Wilkinsburg Borough's residents and officials.

J.     In or around June 2010, Defendant Chief Coleman told Defendant Wilkinsburg Borough's meter maid that "nothing Lieutenant Krempasky says is true."

K.     Defendant Chief Coleman also has told Defendant Wilkinsburg Borough's Police Department's secretary that "nothing Lieutenant Krempasky says is true."

L.     In August 2010, Defendant Wilkinsburg and Defendant Chief Coleman met with members of the SOU, Defendant Wilkinsburg Mayor, John Thompson, and Attorney, Gretchen Love, to discuss potential disciplinary action against Lieutenant Krempasky for allegedly harassing members of Defendant Wilkinsburg Borough's Police Departments' SOU.  Prior to Lieutenant Krempasky's interview with Klink and prior to Lieutenant Krempasky informing Defendants' Counsel in the <u>Suley v. Wilkinsburg</u> matter that her testimony would not favor Defendant Wilkinsburg Borough or Defendant Chief Coleman, when Lieutenant Krempasky waged complaints about the behavior of some members of SOU, Defendants did not accuse Lieutenant Krempasky of harassment.

M.     In September 2010, Defendant Chief Coleman initiated a County Police investigation against Lieutenant Krempasky and accused Lieutenant Krempasky of allegedly trying to "run over" a Wilkinsburg resident.  Lieutenant Krempasky did not try to "run over" a Wilkinsburg resident.

N.     On or about September 13, 2010, Lieutenant Krempasky was required to attend a meeting with Defendant Chief Coleman, Union Representative, Dan Cuiffi, Attorney on behalf of Defendant Wilkinsburg Borough, Gretchen Love, Union Business

Manager, Carl Bailey, and Union Counsel, Anthony Deluca, in which Lieutenant Krempasky was interrogated about events, some of which occurred more than two years ago, i.e. **prior** to Lieutenant Krempasky informing Defendant Wilkinsburg Borough's Counsel that her testimony would support Suley and not be favorable to Defendant Wilkinsburg Borough and Defendant Chief Coleman in the Suley v. Wilkinsburg and prior to Lieutenant Krempasky's Klink interview on April 8, 2010.

O.     On or about December 4, 2010, Defendant Coleman berated and embarrassed Lieutenant Krempasky at a Holiday Parade in the presence of a crowd of Wilkinsburg residents and Wilkinsburg high school students.

### Count I
### Krempasky v. Defendants
### 42 U.S.C. § 1983

16.     Plaintiff incorporates by reference paragraphs 1 through 15 as if fully restated herein.

17.     Plaintiff's information and/or complaints she provided/raised to Defendant Wilkinsburg Borough's Borough Manager, Marcinko, and Klink regarding Lieutenant Krempasky's good faith belief that members of the SOU were falsifying overtime, and regarding Defendants not responding to complaints of excessive force; theft; and conduct unbecoming of officers involves matters of public concern and therefore is speech protected under the First Amendment of the U.S. Constitution.

18.     Plaintiff, as a citizen of the United States, did not surrender her rights, privileges, and immunities under the U.S. Constitution as a condition of employment with Defendants.

19.     Plaintiff informing Defendants' Counsel in the Suley v. Wilkinsburg matter

that her testimony would support Suley's claims against Defendant Wilkinsburg

Borough and Defendant Chief Coleman involves matters of a public concern and

therefore is speech protected under the First Amendment of the U.S Constitution.

20.    Under the First and Fourteenth Amendment of the U.S. Constitution,

Plaintiff has a right to speak on matters of public concern; has a right to speak

truthfully pursuant to a subpoena; and has a right to petition the government for redress

of those grievances.

21.    Defendants retaliated against Plaintiff because of the exercise of her right

to speak freely on matters of public concern and to petition the government for redress

of grievances, and therefore Defendants violated Plaintiff's rights under the First and

Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983.

22.    Defendants' adverse actions against Plaintiff deprived her of her federally

protected right to speak freely on matters of public concern and to petition the

government and to not be retaliated against for so doing.

23.    Defendants' retaliation against Plaintiff was intentional and was

undertaken with reckless disregard of Plaintiff's federally protected rights.

24.    As a direct and proximate result of Defendants, intentional and reckless

actions, Plaintiff has sustained and may sustain the following injuries and damages,

some of which may be permanent, in the future:

a.    Loss of benefits;

b.    humiliation;

c.    loss of reputation;

WHEREFORE, Plaintiff demands judgment against Defendants for deprivation of

her rights under the First and Fourteenth Amendments in violation of 42 U.S.C. § 1983, and damages as follows:

a. That Defendants be permanently enjoined from retaliating and/or discriminating against Plaintiff;

b. That Plaintiff be awarded actual, consequential, and inconsequential damages including lost wages and benefits in an amount to be proven at trial, plus interest;

c. That Plaintiff be awarded compensatory damages to compensate for the humiliation she has suffered as a result of Defendants' conduct;

d. That Plaintiff be awarded against Defendant the costs and expenses of this litigation, and, pursuant to 42 U.S.C. § 1988, a reasonable attorney's fee;

e. That Plaintiff be awarded punitive damages against Defendant Chief Coleman in her individual capacity, in an amount sufficient to punish her and to deter similar conduct;

f. That Plaintiff be awarded declaratory and injunctive relief against Defendants in their official capacity;

g. That Plaintiff be awarded such further relief as this Court deems to be just and proper.

### Count II
### Krempasky v. Defendants
### Pennsylvania Whistleblower Law

25. Plaintiff incorporates by reference paragraphs 1 through 24 as if fully restated herein.

26. Under the Pennsylvania Whistleblower Law, 43 Pa. Cons. Stat. Ann § 1421 et seq., employees of a public body may not be discriminated against because they made, or were about to make good faith reports to the appropriate authority of incidents of wrongdoing.

27. Defendants are appropriate authorities within the meaning of the

Pennsylvania Whistleblower Law, 43 PA.Cons.Stat.Ann. § 1422.

28.    Defendants retaliated against Plaintiff because she had reported incidents of Defendants not investigating complaints and allegations that Defendant Wilkinsburg Borough's police officers/detectives were engaging in wrongdoing, including, but not limited to, conduct unbecoming an officer; theft; and excessive force.

WHEREFORE, Plaintiff seeks a judgment against Defendants, including the following:

a.    Payment of benefits from the date of the retaliation;

b.    Compensatory and punitive damages in an amount to be proven at trial;

c.    Any actual damages incurred by Plaintiff;

d.    Costs of litigation and reasonable attorney and fees; and

e.    Any other remedy the court finds to be just.

Respectfully Submitted,

Dated: December 29, 2010            **Joshua M. Bloom and Associates, P.C.**

By /s/ Tiffany R. Waskowicz
Joshua M. Bloom (78072)
Tiffany R. Waskowicz (202933)
3204 Grant Building
310 Grant Street
Pittsburgh, PA 15219